c. whether Plaintiff and the other members of the Class will be damaged irreparably by Defendants' wrongdoing.

31. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of Plaintiff are typical of the claims of the other members of the Class, and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff will fairly and adequately represent the Class.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for the party opposing the Class.

33. Defendants have acted and are about to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Bolt's History

34. Bolt was founded in Norwalk, Connecticut in 1962. The Company develops, manufactures, and sells marine seismic data acquisition equipment and underwater remotely operated robotic vehicles worldwide. Bolt operates through four segments: Seismic Energy Sources, Underwater Cables and Connectors, Seismic Energy Source Controllers, and Underwater Robotic Vehicles.

35. The Company serves marine seismic exploration contractors, oil and gas companies, defense industry, fire and rescue organizations, and educational institutions, as well as federal, state, and local governmental units. Bolt markets its products directly, as well as through sales agents and a network of distributors.

**Bolt's Future Looks Bright**

36. On August 21, 2012, the Company issued a press release announcing its financial results for the fourth quarter and the fiscal year ended June 30, 2012.

37. According to the press release, for the fiscal year ended June 30, 2012, sales increased 35%, compared with fiscal year 2011, and Adjusted Income before Income Taxes, increased 18% from fiscal year 2011. The press release also noted the Company's January 2011 acquisition of SeaBotix, and that in the eighteen months since the date of the acquisition, SeaBotix sales have substantially exceeded the original estimates used to calculate the earn-out accrued at closing of the SeaBotix's acquisition.

38. Bolt's positive financial results continued in fiscal 2013. On August 14, 2013, the Company issued a press release announcing its financial results for the fourth quarter and fiscal year ended June 30, 2013. Once again, the Company experienced a positive increase in its sales and income, announcing a 9.5% increase in sales, compared with fiscal year 2012, and a whopping 338% increase in net income, compared to fiscal 2012.

39. Commenting on these impressing financial results, Defendant Soto stated that "Fiscal year 2013 was a successful year for our Company and we look forward to continued success in fiscal year 2014."

40. Soto's statement in 2013 proved correct. On August 13, 2014, a press release issued by the Company once again reinforced the fact that the Company's financial future looked bright. Sales in fiscal year 2014 increased by 16.7$ compared to fiscal year 2013. Income before income taxes and acquisition contingent earnout charges ($2,500,000 in fiscal year 2014 and $500,000 in fiscal year 2013) increased by 49.7% in fiscal year 2014 compared to the previous year. Net income increased by 21.6% in fiscal year 2014 compared to fiscal 2013.

41. Most telling about Bolt's impressive financial position was Defendant Soto's announcement that he was "pleased to report that today the Board of Directors approved a quarterly dividend of $0.09 per common share, payable on October 2, 2014 to stockholders of record on September 3, 2014." Soto concluded by noting his hope "that fiscal year 2015 will be another successful year for the Company." Unfortunately, Bolt shareholders will not be able to enjoy the fruits of Bolt's impressive growth and expected future success, following the consummation of the Proposed Transaction.

**The Opportunistic Proposed Transaction**

42. On September 3, 2014, Bolt and Teledyne jointly issued a press release (the "Press Release") announcing the companies had entered into the Merger Agreement pursuant to which holders of Bolt common stock will receive $22.00 in cash for each share of Bolt common stock they own. The Press Release stated in pertinent part:

> THOUSAND OAKS, Calif. and Norwalk, Conn. – September 3, 2014 – Teledyne Technologies Incorporated (NYSE:TDY) ("Teledyne") and Bolt Technology Corporation (NASDAQ:BOLT) ("Bolt") jointly announced today that they have entered into a definitive agreement that provides for the merger of Bolt with a wholly-owned subsidiary of Teledyne. Pursuant to the transaction, Teledyne will acquire all of the outstanding common shares of Bolt for $22.00 per share payable in cash. The definitive agreement contemplates that Bolt will pay its previously announced quarterly dividend of $0.09 per common share, payable on October 2, 2014, to stockholders of record on September 3, 2014. The aggregate value for the transaction is approximately $171 million, taking into account Bolt's stock options and net cash as of March 31, 2014. The transaction was unanimously approved by the Boards of Directors of Teledyne and Bolt. In addition, Bolt's directors and executive officers have agreed to vote their shares in favor of the transaction.
>
> Since 1965, Bolt has been a leading supplier of marine seismic energy sources and replacement parts for offshore energy exploration. Bolt also develops and manufactures high-reliability underwater cables and connectors, as well as related electronic controllers, monitoring systems and other auxiliary equipment. Through its SeaBotix business, Bolt is a leading designer and manufacturer of miniature underwater remotely operated vehicles (Mini ROVs) used in maritime security, search and rescue, aquaculture, and scientific research applications.

"Bolt will broaden our rich portfolio of marine instrumentation with a number of highly complementary products," said Dr. Robert Mehrabian, Chairman, President and Chief Executive Officer of Teledyne. "Bolt's geophysical acoustic sources will fit well with our existing hydrophone arrays, which listen for the echoes from these sound sources. Bolt would also bring unique connector technology, products and customers to our subsea interconnect businesses. Finally, SeaBotix expands our marine systems business by adding inspection-class ROVs to our autonomous underwater vehicles (AUVs), while also providing more platforms to use our extensive line of marine sensors."

Raymond M. Soto, Bolt's Chairman and Chief Executive Officer, commented, "This transaction rewards our shareholders, while providing exciting opportunities for both our customers and employees. Our respective companies have complementary products and technology, and given Teledyne's resources, we believe that we can accelerate the development of new products, such as our environmentally friendly marine seismic energy source."

\* \* \*

43. According to *Bloomberg*, the Proposed Transaction measures unfavorably to the average valuation multiples in comparable transactions of similar size in the sector. Particularly, while the average price to EBIT multiple was 72.35 in comparable transactions, the Proposed Transaction values Bolt at a mere 12.43 times EBIT. Furthermore, the average price to net income multiple was 65.03 in comparable transactions while the Proposed Transaction values Bolt at only 19.09 times net income.

44. The Merger Consideration to be paid to Plaintiff and the Class in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bolt is materially in excess of the amount offered in the Proposed Transaction. Furthermore, its current valuation under the Proposed Transaction pales in comparison to similar transactions.

45. The Individual Defendants' failure to reject the inadequate Merger Consideration evidences their disregard for ensuring that Bolt shareholders receive adequate value for their stock. By failing to reject the inadequate Merger Consideration outright, the Individual

Defendants have artificially depressed the value of Bolt stock, thereby depriving Plaintiff and the Class of the right and opportunity to receive the maximum available value for their shares.

**Unreasonable Deal Protection Devices**

46. To the detriment of Bolt's shareholders, the Merger Agreement's terms substantially favor Teledyne and are calculated to unreasonably dissuade potential suitors from making competing offers for the Company.

47. For example, the Individual Defendants agreed to a "No Solicitation" provision in Section 5.2 of the Merger Agreement that unfairly restricts the Board from soliciting alternative proposals which may lead to a "Superior Proposal" by, among other things, constraining its ability to communicate with potential buyers.

48. Section 5.2(f)(ii) of the Merger Agreement defines a "Superior Proposal" as an unsolicited written offer to acquire 50 percent (50%) or more of any class of equity securities of the Company or any of its subsidiaries, or of the assets of Bolt and Bolt's subsidiaries on a consolidated basis, without which Bolt is not entitled to terminate the Merger Agreement.

49. Further, Section 5.2(c) of the Merger Agreement provides Teledyne with significant information rights, requiring Bolt to provide Teledyne with the identity of any unsolicited bidder and the material terms and conditions of any unsolicited proposal, further deterring potential bidders from bidding on the Company.

50. The Merger Agreement also contains a $7,500,000 "Termination Fee," that will also deter potential third party activity. This Termination Fee, which is equal to about 4.4% of the true transaction value, is payable to Teledyne if, among other things, the Individual Defendants cause the Company to terminate the Merger Agreement pursuant to the lawful exercise of their fiduciary duties by pursuing a superior proposal from an alternate bidder

(Section 7.3(c) of the Merger Agreement). The $7,500,000 Termination Fee alone serves as a boon for Teledyne should the Proposed Transaction not go through.

51. Finally, pursuant to Section 7.3(b) of the Merger Agreement, if Bolt or Teledyne's shareholders fail to approve the Proposed Transaction, Bolt is responsible for paying Teledyne "an amount equal to all reasonably documented out-of-pocket fees and expenses incurred by Parent and Merger Sub in connection with this Agreement and the transactions contemplated hereby (not to exceed $1,000,000 in the aggregate)."

52. Taken as a whole, the foregoing deal protection devices effectively foreclose the possibility that a third-party "white knight" may step forward to provide Bolt shareholders with a premium for their shares. Instead, Bolt shareholders are left with the opportunistic and inadequate Merger Consideration offered by the Proposed Transaction.

53. The reason behind the deal protection devices is clear: the absence of a meaningful premium for shareholders creates the very real potential that a third party bidder will attempt to usurp Bolt and submit a higher bid for Bolt.

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTIES
(Against the Individual Defendants)

54. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

55. As members of the Company's Board, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of Bolt's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance Bolt's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public shareholders; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such

conflicts exist, to ensure that all conflicts are resolved in the best interests of Bolt's public shareholders; (e) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Bolt; and (f) disclose all material information in soliciting shareholder approval of the Proposed Transaction.

56. The Individual Defendants have breached their fiduciary duties to Plaintiff and the Class. As alleged herein, the Individual Defendants have initiated a process to sell Bolt that undervalues the Company. The Individual Defendants also failed to sufficiently inform themselves of Bolt's value, or disregarded the true value of the Company. Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to the Proposed Transaction.

57. As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value.

58. Plaintiff and the members of the Class have no adequate remedy at law.

<strong><u>SECOND CAUSE OF ACTION</u></strong>

<strong>AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES<br>(Against Parent and Merger Sub)</strong>

59. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

60. The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

61. By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

62. Parent and Merger Sub, by reason of their status as parties to the Merger Agreement and their possession of non-public information, have acted and are acting with

knowledge of, or with reckless disregard to, the fact that the Individual Defendants have committed aforesaid breaches of their fiduciary duties, or have participated in such breaches of fiduciary duties.

63. Parent and Merger Sub have knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Parent and Merger Sub rendered substantial assistance in order to effectuate the Merger Agreement and the Proposed Transaction in breach of the Individual Defendants' fiduciary duties. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Parent and Merger Sub.

64. As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their Bolt shares.

65. Plaintiff and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment, as follows:

A. Declaring this action to be a proper class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B. Preliminarily and permanently enjoining Defendants from proceeding with, consummating, or closing the Proposed Transaction;

C. Declaring the Proposed Transaction void and ordering rescission if those transactions are consummated;

D. Requiring disgorgement and imposing a constructive trust on all property and profits Defendants receive as a result of their wrongful conduct;

   E. Awarding damages, including rescissory damages, in favor of Plaintiff and the Class against all Defendants, jointly and severally, together with interest thereon;

   F. Awarding reasonable fees, together with expenses, to Plaintiff's counsel; and

   G. Granting such other and further relief as the Court deems just and proper.

Dated: September 15, 2014   Respectfully submitted,

By: _____

Matthew L. Tuccillo
**POMERANTZ LLP**
Juris Number: 430212
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: (212) 661-1100
Fax: (212) 661-8665

**OF COUNSEL:**

**POMERANTZ LLP**
Gustavo F. Bruckner
Anna Karin F. Manalaysay
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: (212) 661-1100
Fax: (212) 661-8665

*Attorneys for Plaintiff*

A TRUE COPY ATTEST:

Keith D Niziankiewicz
Connecticut State Marshal
Indifferent Person

{00142135;3 }  15