## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT (NEW HAVEN)

SHIVA STEIN, on behalf of herself and all
others similarly situated,

                 Plaintiff,                  Case No.: 3:14-cv-01410-WWE

vs.                                      October 1, 2014

BOLT TECHNOLOGY CORPORATION, JOSEPH
ESPESO, MICHAEL C. HEDGER, STEPHEN F.
RYAN, KEVIN M. CONLISK, PETER J. SICILIANO,
GERALD A. SMITH, MICHAEL H. FLYNN, GEORGE
R. KABURECK, RAYMOND M. SOTO. TELEDYNE
TECHNOLOGIES INCORPORATED, and
LIGHTNING MERGER SUB, INC.,

                 Defendants.

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS TELEDYNE TECHNOLOGIES INCORPORATED AND LIGHTNING MERGER SUB, INC.

Defendants Teledyne Technologies Incorporated ("TDY") and its wholly owned subsidiary Lightning Merger Sub, Inc. ("LMS") (hereinafter collectively the "Teledyne Defendants") respectfully ask the Court to reject the improper practice of filing "aiding and abetting" counts against acquiring corporations predicated upon nothing more than entering into a garden-variety merger agreement. Controlling law, sound judicial and public policy, and United States Supreme Court precedent regarding federal pleading requirements warrant dismissal of the Complaint against the Teledyne Defendants. Accordingly, the Complaint should be dismissed for (1) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and (2) lack of a basis for injunctive relief.

## I. Introduction

On Wednesday, September 3, 2014, after substantial negotiation, the Teledyne Defendants and Bolt Technology Corporation ("Bolt") announced an agreement whereby LMS would purchase the outstanding publicly held stock of Bolt for *$22* per share and TDY would thereby acquire the company as a wholly owned subsidiary. *See* Complaint (Compl.) ¶4. At the market close on the previous trading day (Tuesday September 2, 2014), Bolt's stock price on the NASDAQ had been *$16.41* per share (available at www.nasdaq.com/symbol/bolt/historical). *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000) (district court may take judicial notice of stock price). The high price for Bolt's stock in the preceding three-month period was $18.35 on June 30, 2014; in the six–month period before September 3, 2014, Bolt's stock had never traded above $20.59; and the average Bolt stock price in the preceding year was $18.74. (Data available at www.nasdaq.com/symbol/bolt/historical). When compared to the $16.41 trading price on September 2, 2014, Teledyne Defendants' proposed $22 per share to Bolt stockholders was a substantial premium of *over 34 percent*.[1]

In recent years, merger and acquisition transactions like this one have increasingly become a target of suits such as this, which seek to block the proposed transaction via preliminary injunction, aiming to end in a settlement with the purportedly injured class plus attorney's fees for class counsel. These suits, which we submit are generally without merit and certainly without merit in the instant case, are the current suit *de jour* among the plaintiffs' securities class action bar. A study by Cornerstone Research concluded that, in 2013, the plaintiffs' bar filed suits challenging *94%* of the acquisitions involving companies valued at over

---

[1]   Pursuant to Section 3.23 of the merger agreement at issue, Bolt's Board of Directors obtained an opinion from a third-party Financial Advisor that "the Merger Consideration is fair to [Bolt Stockholders] from a financial point of view."  Mot., Ex. A at §3.23.

$100 million. *See* Cornerstone Research, *Recent Developments in Shareholder Litigation Involving Mergers and Acquisitions* (2014) at 3. Courts have rightfully viewed these actions with skepticism: As one court commented, "I don't think for a moment that 90 percent – or based on recent numbers, 95 percent of deals are the result of a breach of fiduciary duty. I think there are market imbalances here and externalities that are being exploited." *Stourbridge Inv. LLC v. Bershoff*, C.A. No. 7300-VCL at 14L5-8 (Del. Ch. Mar. 13, 2012) (TRANSCRIPT) (found at Mot., Ex. D).

The Delaware Court of Chancery, which has gained extensive experience with this model of litigation,[2] has observed that "the first cases often appear minutes or hours after the [merger] announcement with others following within a matter of days." *In re Revlon, Inc. S'holders Litig.*, 990 A.2d 940, 943 & n.2 (Del. Ch. 2010) (citing *In re Cox Commc'ns, Inc.*, 879 A.2d 604, 608 (Del. Ch. 2005) (referring to the "hastily-filed, first-day complaints that serve no purpose other than for a particular law firm and its client to get into the medal round of the filing speed (also formerly known as the lead counsel selection) Olympics"); *TCW Tech. Ltd. P'ship v. Intermedia Comm'ns, Inc.*, No. 18336, 2000 WL 1654504, at *3 (Del. Ch. Oct. 17, 2000) ("Too often judges of this Court face complaints filed hastily, minutes or hours after a transaction is announced, based on snippets from the print or electronic media. Such pleadings are remarkable, but only because of the speed with which they are filed in reaction to an announced transaction."). Here, the merger was announced on September 3, 2014 (Compl. ¶2).  Within 24 hours, law firms were

---

[2]  Because it is the place of incorporation of many corporate entities, Delaware has a well-established body of law addressing suits such as the instant one.  The law in Connecticut, on the other hand, is relatively sparse.  Accordingly, as the leading jurisdiction in this area of the law, Delaware authority is cited extensively in the relevant portions of this Memorandum. "When there is no Connecticut case law on point, Connecticut courts look to Delaware case law for guidance on questions of corporate law, as it is the forum where the majority of such issues are litigated." *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 3:07-CV-1851 CFD, 2011 WL 3555783, *2 n. 2 (D. Conn. Aug. 8, 2011) (citations and alterations omitted).

posting internet advertisements soliciting shareholders to become clients. *See*, *e.g.*, http://brodsky-smith.com/813-bolt-bolt-technology-corp.html. Four different class action suits, filed by various law firms, were filed within just two weeks of this announcement.[3]

In the instant case, the Complaint was filed on September 15, 2014, less than two weeks after the deal was announced and before a preliminary proxy statement had even been filed. *See* Compl. ¶4. The Complaint contains two counts: Count I for breach of fiduciary duty against Bolt and its directors and Count II for aiding and abetting breach of fiduciary duty against the Teledyne Defendants.

The Teledyne Defendants hereby move to dismiss the only count against them, Count II. Count II contains nothing more than a bare-bones conclusory pleading of purported aiding and abetting liability on the Teledyne Defendants' part—nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, Count II should be dismissed for failure to state a claim upon which relief can be granted under the federal pleading standard set forth in *Iqbal* and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). *See Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 386, 386 n.10 (S.D.N.Y. 2007) (confirming application of *Twombly* to claims of aiding and abetting breach of fiduciary duty). Moreover, Count II, as well as Plaintiff's request for injunctive relief, should be dismissed because (i) even the conclusory allegations in the Complaint are insufficient

---

[3]  Each of those four suits has been removed to this Court and, in addition to the instant action, are found at the following Docket Numbers: 3:14-CV-01406-MPS (*Walker v. Bolt Technology Corporation, et al*), 3:14-CV-01407-SRU (*Halstrom v. Bolt Technology Corporation, et al*), and 3:14-CV-01409-WWE (*Post v. Bolt Technology Corporation, et al*).  Since, upon removal, they were assigned to different judges, the Teledyne Defendants have moved, pursuant to Local Rules of Civil Procedure 40 and 42, to transfer and consolidate the four cases before the judge of the earliest, first-filed case in this court 3:14-CV-01406-MPS (*Walker v. Bolt Technology Corporation, et al*), which is Judge Shea. A fifth case, *Linnemeyer v. Bolt Technology Corporation, et al*, was filed on September 29, 2014 and removed to this Court on September 30, 2014; it is assigned to Judge Underhill at Docket Number 3:14-CV-01438.

to state a claim upon which relief can be granted, as the objected to merger terms are common place and have been routinely held to be proper by courts, and (ii) any claimed harm can be compensated with monetary damages.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Twombly*, 550 U.S. at 570). A two-step analysis is required. First, the Court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Such pleadings can safely be ignored. Second, focusing on the remaining "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see Geo Group, Inc. v. Cmty. First Services, Inc.*, No. 11-CV-1711 CBA, 2012 WL 1077846, at *10 (E.D.N.Y. Mar. 30, 2012); *Tahir v. Import Acquisition Motors, L.L.C.*, No. 09 C 6471, 2010 WL 2836714, at *1 (N.D. Ill. July 15, 2010) ("Simply providing a defendant with notice of the claims against her is no longer enough . . . .").

If a complaint does not allege facts stating a plausible claim on its face, then it should be dismissed, rather than allowing a plaintiff to root around for a viable cause of action in discovery, because the purpose of discovery is not to remedy a pleading defect. *See Iqbal,* 556 U.S. at 678-79 (notice pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Patterson v. Novartis Pharmaceuticals Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011) ("The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint."); *Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 813 F. Supp. 2d

557, 568-69 (S.D.N.Y. 2011) (citing with approval *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011)); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("The plaintiff may not use the discovery process to obtain these facts after filing suit.  The language of *Iqbal*, 'not entitled to discovery,' is binding on the lower federal courts.")).

### III. Procedural Background and Allegations in the Complaint

This action was filed in Superior Court of the State of Connecticut, Judicial District of Stamford-Norwalk at Stamford, on September 15, 2014. On September 24, 2014, the Teledyne Defendants removed the action to this Court under, *inter alia*, the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §1332(d); the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. §78bb(f); and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The Complaint, on its face, contains allegations about the basic outline of the proposed transaction. *See* Compl. ¶¶4, 42-52. However, the Complaint fails to plead a single fact or detail as to any specific conduct taken by the Teledyne Defendants or their agents other than entering into the agreements related to the merger.  *Id*.

The Complaint describes several features of the deal, which are typical of a transaction of this kind, as follows. The Complaint notes that as a condition of the Teledyne Defendants' agreeing to buy the company, the agreement requires that Bolt stop any negotiations with any third party and not solicit other offers. Compl. ¶¶ 46-49. If, notwithstanding compliance with these conditions, a competing offer were to emerge, the Teledyne Defendants would have certain rights to match it. *Id*. The Compl. ¶¶50-51 also alleges a termination fee of $7.5 million, which is alleged to be nearly 4.4 percent of the total deal value of $171 million. If the transaction does not go through as contemplated, then, under certain circumstances, Bolt would owe Teledyne that

fee. *Id.*[4]

The entirety of Count II against the Teledyne Defendants, for aiding and abetting the non-Teledyne Defendants' (hereinafter the "Bolt Defendants") alleged breaches of fiduciary duty, states:

59.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

60.     The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set forth herein.

61.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

62.     Parent and Merger Sub, by reason of their status as parties to the Merger Agreement and their possession of non-public information, have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants have committed aforesaid breaches of their fiduciary duties, or have participated in such breaches of fiduciary duties.

63.     Parent and Merger Sub have knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Parent and Merger Sub rendered substantial assistance in order to effectuate the Merger Agreement and the Proposed Transaction on breach of the Individual Defendants' fiduciary duties. Such breaches of

---

[4]  Although referenced in the Complaint, the merger agreement is not attached as an exhibit. For completeness, the merger agreement is found at Exhibit A to the instant Motion to Dismiss. Because the merger agreement is referenced in the Complaint, it is properly considered in evaluating a motion to dismiss.  *E.g.*, *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004); *In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir. 2013).

fiduciary duties could not and would not have occurred but for the conduct of Parent and Merger Sub.

64.     As of result of this conduct, Plaintiff and the other members of the Class have been and will be damages in that they have been and will be prevented from obtaining a fair price for their Bolt shares.

65.     Plaintiff and the members of the Class have no adequate remedy at law.

Nowhere in these paragraphs or elsewhere in the Complaint does the Plaintiff allege any conduct by the Teledyne Defendants other than allegedly causing the Bolt Defendants' to include allegedly unreasonable deal protections in the merger agreement.  *See generally* Compl. ¶¶ 1-58. As discussed in detail below, based on well-established law, the Complaint is woefully insufficient and fails to state a claim upon which relief can be granted against the Teledyne Defendants.

## IV. Argument

A.     <u>The Complaint Fails to State a Claim Under *Twombly* and its Progeny</u>

As to the Teledyne Defendants, the Complaint is a textbook example of a legally insufficient pleading that contains only conclusory allegations, not well-pleaded factual allegations as required by *Twombly* and its progeny. The analysis starts and ends with step one of the *Iqbal* analysis, which is to ignore any pleadings that "are no more than conclusions." In this instance, all of the allegations supporting Count II against the Teledyne Defendants are "no more than conclusions," and must be ignored. There are no well-pleaded factual allegations to support a claim against the Teledyne Defendants.

When a claim is pled in federal court it must set forth factual allegations as to each required element of the asserted cause of action sufficient to meet the *Iqbal* and *Twombly*

standards.  "Knowing participation" is a required element of an aiding and abetting claim. [5]  *E.g.*,

*McGowan v. Ferro*, No. Civ.A. 18672-NC, 2002 WL 77712, at *2-4 (Del. Ch. Jan. 11, 2002);

*Coppola Const. Co., Inc. v. Hoffman Enterprises Ltd.*, 2012 WL 4040246 *63 (Conn. Super.

2012).  In corporate acquisition cases like the instant one, the knowing participation element of

aiding and abetting a breach of fiduciary duty is well-founded in both public and judicial policy

because it "protects acquirers . . . from the high costs of discovery where there is no reasonable

factual basis supporting an inference that the acquirer was involved in any ***nefarious*** activity."

*Morgan v. Cash*, C.A. No. 5053-VCS, 2010 WL 2803746, at *8 (Del. Ch. July 16, 2010)

(emphasis added). As the *Morgan* court explained: "To allow a plaintiff to state an aiding and

abetting claim against a bidder simply by making a cursory allegation that the bidder got too

---

[5]     Regardless of which state law applies—California (the site of Teledyne's headquarters), Connecticut (the site of Bolt's headquarters and its place of incorporation), or Delaware (as the state of incorporation of Teledyne)—the outcome on this Motion to Dismiss is the same. For that reason, the Court need not decide a choice of law question that is academic. *See, e.g., Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 612-13 (S.D.N.Y. 2011) (dismissing aiding and abetting fiduciary duty claim regardless of whether New York or Delaware law applied).
        To the extent that the court engages in a choice of law analysis, the elements of an aiding and abetting claim under California, Delaware, and Connecticut law are substantially similar. The elements of an aiding and abetting claim set forth in California law are: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) breach of that duty; (3) knowledge of the breach by the aider and abettor; and (4) substantial assistance or encouragement of the wrongdoer by the aider and abettor." *Ortho-Med, Inc. v. Micro-Aire Surgical Instruments, Inc*., No. CV 93-7621 JGD, 1995 WL 293180, at *12 (C.D. Cal. Apr. 10, 1995). Similarly, in Connecticut, the elements of an aiding and abetting claim are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury, (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Coppola Const. Co., Inc. v. Hoffman Enterprises Ltd.*, 2012 WL 4040246, at * 63 (Conn. Super. 2012). In Delaware, the elements of an aiding and abetting claim are "(1) a fiduciary relationship; (2) a breach of that relationship; (3) that the alleged aider and abettor knowingly participated in the fiduciary's breach of duty; and (4) damages proximately caused by the breach." *Gatz v. Ponsoldt*, 925 A.2d 1265, 1275-76 (Del. 2007); *In re NYMEX S'holder Litig.*, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051 *12 (Del. Ch. Sept. 30, 2009).

good a deal is fundamentally inconsistent with the market principles with which our corporate law is designed to operate in tandem." *Id.*

Thus, in the context of a merger, to satisfy the "knowing" element of an aiding and abetting claim, a plaintiff must factually plead (and ultimately prove) some affirmative, improper conduct ("nefarious activity") by the acquiring entity (here the Teledyne Defendants) other than simply negotiating the deal at arms length. *E.g.*, *Morgan*, 2010 WL 2803746, at *6-8 (knowing requirement not met absent allegations of "unjust, "improper" or "nefarious" conduct); *Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001) (dismissing aiding and abetting claim due to lack of allegations that acquiring corporation improperly exploited any conflicts of interest). This pleading requirement is founded in sound public policy because the acquiring corporation and its officers and directors owe a fiduciary duty to their own shareholders to obtain the best deal possible; they do not owe a fiduciary duty to the corporation being acquired or its shareholders (the Plaintiff here). *Morgan*, 2010 WL 2803746, at *7-8 ("EMC owed fiduciary duties to its own stockholders to use EMC's funds prudently, of course, and was not obligated to offer an inflated price for Voyence when it could acquire the company for less through honest bargaining."). Thus, courts have established a "long-standing rule that arm's-length bargaining is privileged and does not, ***absent actual collusion and facilitation of fiduciary wrongdoing***, constitute aiding and abetting[,]" which long-standing rule "helps to safeguard the market for corporate control by facilitating the bargaining that is central to the American model of capitalism." *Id.* (emphasis added).

The instant Complaint clearly fails to satisfy these pleading requirements as to the Teledyne Defendants. The Complaint contains no allegations — not even a conclusory one — that the Teledyne Defendants knowingly participated in the Individual Defendants' purported

breaches of fiduciary duty, nor can such knowing participation be inferred. There are no allegations of "actual collusion and facilitation of fiduciary wrong doing." *Id*. For example, there are no allegations that representatives of the Teledyne Defendants attended Bolt's board meetings, directed Bolt's board members how to act, or otherwise colluded with any of the Bolt Defendants. *See Malpiede*, 780 A.2d at 1098 (dismissing aiding and abetting claim after finding that "there is no indication in the amended complaint that Knightsbridge participated in the board's decisions, conspired with board, or otherwise caused the board to make the decisions at issue").

Instead, the facts as alleged in the Complaint demonstrate nothing more than that the merger agreement in this case was the product of arm's-length negotiations between Bolt and the Teledyne Defendants. *See* Compl. ¶¶ 4, 42, 45-52. By routinely dismissing claims like the instant one, courts across the country have consistently made clear that "arm's-length negotiations cannot give rise to liability for aiding and abetting" breaches of fiduciary duty against a party to a merger agreement. *Malpiede*, 780 A.2d at 1097; *Morgan*, 2010 WL 2803746, at *5-8 (dismissing aiding and abetting claim); *Santa Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995) (dismissing aiding and abetting claim); *Binks v. DSL.net*, No. Civ.A. 2323-VCN, 2010 WL 1713629, at *11 (Del. Ch. Apr. 29, 2010) (arm's-length negotiation "precludes a showing that the defendants knowingly participated in the breach by the fiduciaries" (internal quotation marks omitted)); *Boudinot v. Schrader*, 09 Civ. 10163 (LAK), 2012 WL 489215, at *10 (S.D.N.Y. Feb. 15, 2012) (dismissing aiding and abetting claim in merger context); *Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061, 2005 WL 2045807, at *5 (N.D. Cal. Aug. 25, 2005), *aff'd*, 254 F. App'x 669 (9th Cir. 2007).

In dismissing a similar claim against an acquiring corporation, the federal district court for the Northern District of California succinctly and persuasively stated:

> The Court need not accept as true such conclusory allegations where, as here, Plaintiffs have pointed to no specific factual allegations regarding Shell's or Longinotti's knowledge of any fiduciary duties the CSFB Defendants may have undertaken on Plaintiffs' behalf, *or to any specific allegations regarding what Shell or Longinotti allegedly did to substantially assist or encourage breach of any such duties. . . . Nor have Plaintiffs alleged any actions by Quattrone that could have substantially assisted someone else's breach of fiduciary duties during the merger negotiations.*

*Scognamillo*, 2005 WL 2045807, at *5.  That is the exact case here.  The *Scognamillo* court dismissed the plaintiff's aiding and abetting claim and this Court should do the same.

Here, as in *Malpiede*, *Scognamillo* and the other cases cited above, "there is no indication in the [Complaint] that [the Teledyne Defendants] participated in the board's decisions, conspired with [the] board, or otherwise caused the board to make the decisions at issue." *Malpiede*, 780 A.2d at 1098.  Absent allegations of well-pled ***facts*** to that effect, which are non-existent here, Count II of the Complaint amounts to "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. The Complaint attempts to state a claim against the Teledyne Defendants for aiding and abetting based on nothing more than conclusory allegations. The Complaint contains no factual allegation of affirmative, improper conduct by the Teledyne Defendants (and none could be properly be made). On its face, the Complaint clearly fails to allege any specific actions taken by any Teledyne personnel or agent that could plausibly support an allegation of "substantial assistance" or "knowing participation" in the alleged breaches of fiduciary duty. In light of *Twombly* and its progeny, and the essential elements of an aiding and abetting claim, the Complaint must be dismissed as to the Teledyne Defendants.

Moreover, the deal protection provisions at issue cannot give rise to a cause of action, as a matter of law, so Count II is insufficient for this independent reason as well.

B.      As a Matter of Law, the Deal Protection Provisions Cited in the Complaint Do
        Not Show Any Breach of Fiduciary Duty That the Teledyne Defendants Could
        Have Aided and Abetted.

        Besides the lack of factual allegations of aiding and abetting activity by the Teledyne

Defendants, there also is no actionable breach of fiduciary duty alleged in the Complaint. The

Teledyne Defendants could not be liable for aiding and abetting if no substantive breach of

fiduciary duty has occurred. [6]  *E.g.*, *Coppola, supra.*

        The Complaint's substantive claim for breach of fiduciary duty by the Bolt Defendants

(Count I) rests on three core allegations: (1) the inclusion in the merger agreement of a "No

Solicitation" provision; (2) the inclusion in the merger agreement of a "Matching Rights"

provision, and (3) the inclusion in the merger agreement of a termination fee of $7.5 million. *See*

Compl. ¶¶ 46-53.  Plaintiff also claims that the transaction price is too low.  *Id.* ¶¶42-45. This

does not state a breach of fiduciary duty as a mater of law, let alone a claim against the Teledyne

Defendants as the acquiring entities.

        First, the Teledyne Defendants as the acquiring entity cannot have liability for having

negotiated a favorable sale price – that is the job of an acquiring entity and part of the duty the

Teledyne Defendants owe to their own shareholders. *E.g. Morgan*, 2010 WL 2803746, at *7-8.

Second, the complained of deal protection provisions of the merger agreement are routine and

have been repeatedly and routinely upheld by courts as appropriate.  *E.g. In re Novell, Inc.

S'holders Litig.,* 2013 WL 322560, at *10 (dismissing fiduciary duty breach claim and aiding

and abetting claim based on standard deal provisions: "The deal protection devices in the merger

agreement—the no solicitation provision, the matching rights provision, and the termination

---

[6] Even then, Plaintiff would have to establish, *inter alia*, a knowing participation by the Teledyne
Defendants in any such breach, as well as the provision by the Teledyne Defendants of
substantial assistance of that breach. *Coppola*, 2012 WL 4040246 at *63.

fee—are customary and well with the range permitted under Delaware law. The mere inclusion of such routine terms does not amount to a breach of fiduciary duty"); *In re 3Com S'holders Litig,* C.A. No. 5067-CC, 2009 WL 5173804, at * 7 (Del. Ch. Dec. 18, 2009) ("The provisions that plaintiffs attack have been repeatedly upheld by this Court . . this Court has repeatedly held that [no solicitation, matching rights and termination fee provisions] are standard merger terms, are not *per se* unreasonable, and do not alone constitute breaches of fiduciary duty."); *SeraCare Life Sciences, Inc. S'holders Litig.*, C.A. No. 7250-VCG, at 9:10-16 (Del. Ch. Mar. 20, 2012) (TRANSCRIPT) ("Deal lawyers have scores of cases to choose from when looking to support a 3 percent termination fee, a no-shop paired with a fiduciary out, and a matching rights provision with a reasonable time restriction.   Thus, it is no surprise that this deal contains those very provisions that have been upheld by this Court several times.") (found at Mot. Ex. B); *McCue v. LeCroy Corp,* 12 Civ. 4650-ER (S.D.N.Y. July 13, 2012) (TRANSCRIPT) (denying motion for expedited discovery and preliminary injunction in case challenging no solicitation, matching rights and termination fee provisions of merger agreement) (found at Mot. Ex. C). In fact, courts have expressly endorsed these very deal protection measures because "it is likely that such deal protections actually tend to secure higher offers by giving the bidder some measure of assurance that its negotiation will not simply position it as a stalking horse for other potential bidders." *SeraCare*, at 9:16-20; *see e.g. In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 502 (Del. Ch. 2010) ("Potential suitors often have a legitimate concern that they are being used merely to draw others into a bidding war. Therefore, in an effort to entice an acquirer to make a strong offer, it is reasonable for a seller to provide a buyer some level of assurance that he will be given adequate opportunity to buy the seller, even if a higher bid later emerges.").

Thus, as a matter of well-established law, the "no solicitation" and "match rights"

provisions of the merger agreement alleged in ¶¶53-57 of the Complaint are entirely proper. *E.g.*, *In re Novell, Inc. S'holders Litig.*, 2013 WL 322560, at *10; *In re 3Com S'holders Litig,* 2009 WL 5173804, at * 7; *In re Smurfit-Stone Container Corp. S'holder Litig.*, No. CIV.A. 6164-VCP, 2011 WL 2028076, at *21 n.141 (Del. Ch. May 20, 2011, revised May 24, 2011) ("[N]o shop and matching rights clauses of the kind included in the Merger Agreement are customary in public company mergers today."); *In re Cogent, Inc. S'holder Litig.*, 7 A.3d at 502 (finding that plaintiffs were unlikely to succeed in objecting to "no shop" provision and matching rights, especially given "fiduciary out" clause); *In re Toys "R" Us, Inc., S'holder Litig.*, 877 A.2d 975, 1017 (Del. Ch. 2005) (denying motion for preliminary injunction involving "no shop" provision and matching rights, while noting that a matching right "is a common contractual feature that, when assented to by a board fulfilling its fundamental duties of loyalty and care for the proper purpose of securing a high value bid for the stockholders, has legal legitimacy.").

Moreover, the No Solicitation provision in the merger agreement at issue here expressly allows Bolt to consider a "Superior Proposal" if it receives one.  See Mot. Ex. A, §§5.1(a)(iv) and 5.2(a). Further, and clearly precluding a claim against the Teledyne Defendants for aiding and abetting, the merger agreement expressly provides, in relevant part, that:

> [T]he Board may, prior to the date of the Special Meeting, and subject to compliance with all of the requirements of this <u>Section 5.2(b)</u> and <u>Sections 5.2(a)</u>, <u>5.2(c)</u> and <u>5.2(d)</u>, (xx) withdraw or modify its approval, determination of advisability, or recommendation of this Agreement, the Merger, and the other transactions contemplated hereby or (yy) determine to be advisable or recommend a Superior Proposal, ***if in either case the Board determines in good faith that the failure to take such action would be inconsistent with its fiduciary duties to the Company's shareholders under applicable law***, either (A) in response to a Superior Proposal that was unsolicited and made after the date hereof in circumstances not otherwise involving a breach of this Agreement, after considering applicable provisions of state law and after consultation with outside counsel . . .

Mot. Ex. A, §5.2(b) (emphasis added). The Teledyne Defendants could not have knowingly

aided and abetted an alleged fiduciary duty breach when the merger agreement that serves as the premise for such breach expressly provides that the allegedly offensive provisions will not govern if adhering to them would result in a fiduciary duty breach. *See In re Cogent* 7 A.3d at 502, 509 (denying preliminary injunction regarding merger agreement that, *inter alia*, had "fiduciary out" clauses).

Likewise, the termination fee in this case alleged in paragraph 58 of the Complaint to be 4.4 percent of the transaction value is entirely in keeping with what numerous Delaware courts have approved. *See e.g. Malpiede*, 780 A.2d at 1081, n.10 (dismissing aiding and abetting claim concerning transaction with 7% termination fee); *Dent v. Ramtron Int'l Corp.*, C.A. No. 7950, 2014 WL 2931180, *9 (Del. Ch. June 30, 2014) (dismissing claims for breach of fiduciary duty and concluding that the 4.5% "termination fee cannot form the basis of an actionable claim against the" directors who approved the merger); *In re Orchid Cellmark Inc. S'holder Litig.*, 2011 WL 1938253, at *7-8 (Del. Ch. May 12, 2011) (denying motion to enjoin a cash offer where deal protections included a no-shop provision, matching rights, a termination fee of 4.6% of the target's enterprise value and a "Top-Up" option); *In re Answers Corp. S'holders Litig.*, 2011 WL 1366780 at *4, n. 52 (upholding 4.4% termination fee); *In re Topps Co. S'holders Litig.*, 926 A.2d 58, 86 (Del. Ch. 2007) (finding 4.3% termination fee not "likely to have deterred a [higher] bidder."); *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *7 (approving termination fee of greater than 4%) *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 614-15 (Del. Ch. 2010) (upholding 3.9% termination fee); *In Re Toys R Us, Inc. S'holder Litig.*, 877 A.2d 975, 1015–21 (Del. Ch. 2005) (approving a 3.75% of equity value fee); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 505–06 (Del. Ch. 2000) (approving a 3.5% fee); *In re Novell, Inc. S'holders Litig.*, 2013 WL 322560, at *10 (Del. Ch. Jan. 3. 2013) (dismissing breach of

fiduciary duty claim regarding transaction with an 8% of actual purchase price termination fee representing 2.7% of the equity value of the transaction).  Thus, a termination fee of the dimension involved here has been repeatedly upheld as an appropriate exercise of a board's fiduciary duties to maximize the sale value of the company in such circumstances.  Indeed, Delaware courts have sanctioned termination fees that were more than fifteen times the $7.5 million fee in the instant merger.  *See In re Smurfit-Stone Container Corp. S'holder Litig.*, No. CIV.A. 6164-VCP, 2011 WL 2028076, at *21 (termination fee of $120 million).

Plaintiff cannot morph routine deal provisions into a purported cause of action, ***let alone a claim against the Teledyne Defendants who owe no fiduciary duty to Plaintiff and have their own duties and obligations to their shareholders to achieve the best deal possible for Teledyne***.  *E.g.*, *Morgan*, 2010 WL 2803746, at *7-8 (dismissing aiding and abetting claim: "EMC owed fiduciary duties to its own stockholders to use EMC's funds prudently, of course, and was not obligated to offer an inflated price for Voyence when it could acquire the company for less through honest bargaining.").  Since the standard deal protection provisions at issue are lawful and have been repeatedly upheld by courts, as a matter of law, it is not sufficient for Plaintiff to rely on the negotiation of these provisions as providing the bases for alleging that the Bolt Defendants breached their fiduciary duty——much less that the Teledyne Defendants as the acquiring entities knew they breached such fiduciary duty and provided substantial assistance to such breach.  Plaintiff's allegations are insufficient as a matter of law and Count II against the Teledyne Defendants should be dismissed.

C.    <u>Plaintiff's Claim for Injunctive Relief Should Be Dismissed Because, as a Matter of Law, She Cannot Establish Irreparable Harm Since Any Purported Injury Can Be Compensated With Monetary Damages</u>

It is boilerplate law that in order to obtain injunctive relief, a party must, at a minimum, show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (setting forth standards for a preliminary injunction, including need to establish irreparable harm). Thus, injunctive relief is not granted to parties, such as Plaintiff here, claiming potential losses that are compensable in money, and therefore not irreparable. This is especially true where, as here, such an injunction will likely cause permanent harm to other parties, including other shareholders who favor the transaction at issue. *In re Delphi Financial Group S'holder Litig.*, C.A. No. 7144-VCG, 2012 WL 729232, at *19 (Del. Ch. 2012) ("[I]n the context of a single-bidder merger, the Court when balancing the equities must be cognizant that if the merger is enjoined, the deal may be lost forever, a concern of particular gravity where, as here, the proposed deal offers a substantial market premium over market price."); *In re Del Monte, Foods S'holders Litig.*, 25 A.3d at813, 839 (Del. Ch. 2011) ("When there is no competing proposal, this Court rarely will enjoin a premium transaction pending trial."); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 208 (Del. Ch. 2007) ("[W]hen this court is asked to enjoin a transaction and another higher-priced alternative is not immediately available, it has been appropriately modest about playing games with other people's money."). Here, Plaintiff's Complaint, on its face, fails to establish a basis for injunctive relief because any complained of damages can be compensated monetarily.

Courts have routinely denied injunctive relief (and as shown above often dismiss claims) in cases analogous to the instant one because any alleged injuries are compensable in money. *E.g.*, *In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 WL 2028076 at *26 ("[S]tockholders who agree with Plaintiffs that $35 per share undervalues their investment in the Company are not without recourse in the absence of injunctive relief. Plaintiffs still may seek money damages as compensation for the Board's alleged breaches of their fiduciary duties."); *McCue v. LeCroy Corp,* 12 Civ. 4650-ER at 89:2-9 (S.D.N.Y. July 13, 2012) (TRANSCRIPT) (found at Mot. Ex. E) ("To the extent plaintiff is alleging injuries as a result of her claims that the individual defendants breached their fiduciary duties in various ways that essentially sound in Revlon-type violations, and that Teledyne aided and abetted such breaches, I find that those are the types of injuries that can be remedied by monetary damages, and thus are not the type of damages that can be used to support a request for preliminary injunctive relief."). This Court should follow this well-reasoned authority and dismiss Plaintiff's prayer for injunctive relief.

While, as explained above, Plaintiff's claims are legally insufficient on the merits, assuming *arguendo* that the claims survive, there clearly is an adequate remedy at law, namely to provide Plaintiff and the class more money for their shares. Indeed, even where plaintiffs demonstrate some probability of success on the merits – something Plaintiffs have failed to do here – Courts are loath to provide equitable relief in cases involving merger transactions. *E.g. In re El Paso S'holder Litig.*, 41 A.3d at 432, 446-47, 451-52 (Del. Ch. 2012) (declining to enjoin premium transaction notwithstanding reasonable probability of success on plaintiffs' claims that the merger was tainted by the disloyalty of the target's CEO and financial advisor). Thus, injunctive relief is not appropriate and Plaintiff's request for injunctive relief should be dismissed.

## V. Conclusion

The Complaint (1) fails under *Twombly* and its progeny to allege the required specific acts by the Teledyne Defendants, (2) attempts to found a cause of action on routine, customary deal provisions, and (3) seeks an injunction where none is needed or appropriate.  Accordingly, we respectfully submit that the Complaint should be dismissed with prejudice as to Teledyne Technologies Incorporated and Lightning Merger Sub, Inc.

Dated: October 1, 2014

Respectfully submitted,
/s/ James T. Shearin
James T. Shearin (CT 01326)
Pullman & Comley LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT  06601
Telephone:  203-330-2240; Fax:  203-567-8888

Walter P. DeForest (pro hac vice application pending)
David J. Berardinelli (pro hac vice application pending)
Steven K. Schartup (pro hac vice application pending)
DeForest Koscelnik Yokitis & Berardinelli
436 Seventh Avenue, 30th Floor
Pittsburgh, PA  15219
Telephone:  412-227-3100; Fax:  412-227-3130

Shawn Fox
Laurent S. Wiesel (pro hac vice application pending)
Kristina M. Allen (pro hac vice application pending)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY  10105
Telephone:  212-548-2140; Fax:    :  212-715-6281
*Attorneys for Defendants Teledyne Technologies Incorporated and Lightning Merger Sub, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  I also certify that on this date, that I served the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS TELEDYNE TECHNOLOGIES INCORPORATED AND LIGHTNING MERGER SUB, INC.** on the counsel shown below, by placing it in First Class U.S. Mail, postage prepaid, addressed as follows:

Matthew L. Tuccillo
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY  10016

*Attorneys for Plaintiff*

Frank J. Silvestri, Jr.
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Westport, CT  06880

John J. Tumilty
Scott R. Magee
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA  02199
*Attorneys for Bolt Technology Corporation, Joseph Espeso, Michael C. Hedger, Stephen F. Ryan, Kevin M. Conlisk, Peter J. Siciliano, Gerald A. Smith, Michael H. Flynn, George R. Kabureck, and Raymond M. Soto*

/s/ James T. Shearin
James T. Shearin (CT 01326)
Pullman & Comley LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT  06601
Telephone:  203-330-2240; Fax:  203-567-8888

Attorneys for Defendants
Teledyne Technologies Incorporated and
Lightning Merger Sub, Inc.